

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

KCB:JPM
F. #2015R00270

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 12, 2023

<u>By Hand and ECF</u>

The Honorable Kiyo A. Matsumoto
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Anthony Villani, <u>et al.</u>
Criminal Docket No. 22-405 (KAM)

Dear Judge Matsumoto:

 The government respectfully submits this letter to respond to defendant Anthony Villani's motion to modify the conditions of pre-trial release (ECF Dkt. Nos. 82, 82-1, 82-2), specifically to modify his home detention to a curfew. For the reasons set forth in the government's initial letter concerning bail conditions (attached as Exhibit A)[1] and those set forth below, the government respectfully concurs with Pretrial Services that Villani's conditions of release should remain unchanged.

 First, the motion fails to meaningfully explain why a modification of release conditions is even necessary. Although it provides "example[s]" of "unwarranted burdens," on the defendant, ECF No. 82 at 3, those principally relate to his work at PlayaBowls (where his current release conditions already permit him to work until 7:00 p.m.). In this regard, the recent defense filing provides less factual justification for a curfew to work than was offered by defense counsel at the time of the arraignment and bond setting before the Honorable Roanne L. Mann, United States Magistrate Judge. See ECF Dkt. No 82-1 at 14-16 ("It's really his work primarily that drives our request for curfew. The business operates seven days a week from 9 a.m. to 9 p.m."); <u>see also</u> <u>id.</u> at 18-19 (The Court: And are you representing to the Court that other than these teenagers who he supervises, there is -- he has no one working for the business, an adult who is in charge or who assists in supervising the low-level employees . . . MR. SER: Your Honor, there is a manager there. . .). Following a colloquy about the nature of the defendant's

---

[1] This letter, which was provided to the Magistrate Clerk at the time of the arrest and when the case was still sealed, does not appear to have been docketed by the Clerk's Office. It is referenced in the defense filing as the "Gov. Bond Conditions Ltr."

work at PlayaBowls, including that co-defendant Louis Tucci was a partner of the defendant at one of his storefronts, the government argued that the risk from an unrestricted curfew was the defendant's "unmonitored contact with other members of the La Cosa Nostra family." Id. at 17. Judge Mann then imposed home detention with GPS monitoring and leave to work (which the government did not oppose) until 7:00 p.m., although not at the location where co-defendant Tucci works. Id. at 23. Judge Mann noted that the defendant could make a future application, "[b]ut for now, the Court concurs with the Government that there has to be – there should be greater controls." Id. at 23-24. The defense motion touches on none of the balancing of interests and representations that Judge Mann engaged with when setting the conditions of release. Nor has the defendant cited any meaningful change in circumstances that would favor rebalancing the controls carefully set by Judge Mann. Further, it must be emphasized that the defendant's income has never principally come from his operation of smoothie stores but from his overseeing a vast offshore gambling business that brought in millions in illegal cash. The government respectfully submits that any claim that the defendant's future operation of PlayaBowls is necessary to his livelihood is antithetical to decades of conduct by the defendant.

Second, the motion takes a number of liberties in addressing the extortion conduct (Racketeering Act Three) by Villani that are fundamentally irrelevant to the government's principal argument (then and now) that a curfew would enable the defendant to readily resume meetings with others in the Luchese crime family. While the motion postures that the conditions of home detention were established because of the extortion of John Doe, even a cursory reading of the transcript and colloquy with Judge Mann reveals the condition arose primarily from the risk of unmonitored criminal associations by the defendant. While it is certainly relevant that the defendant threatened John Doe for non-payment of money, as explained above, the more salient fact is that as an inducted member of the Luchese crime family, the defendant's unrestricted movement would lead to a high risk of new criminal conduct and his continuing in the affairs of the crime family. See, e.g., id. at 23 ("GPS monitoring allows him to go -- Mr. Villani to go wherever he wants. The reason the Government is so vehemently seeking home detention is because we wouldn't be able to know otherwise. And home detention means that he has to report to pretrial everywhere he goes, which is the only way, we believe, to prevent his association with members of organized crime."). Tellingly, the defense motion fails to address the defendant's crime family membership, nor does it balance the request for a curfew against the dozens of surveilled meetings between the defendant and either his co-conspirators or other La Cosa Nostra members that took place across Westchester County (and in and around New York City), see Ex. A, at 3 (photograph of the defendant meeting with members of Luchese family's administration). Meetings like the one highlighted by the government in its initial filing, between sworn members of an indisputably violent criminal organization, see, e.g., United States v. Madonna, et al., 17-CR-89 (CS) (S.D.N.Y.) (recent conviction of members of the Luchese family administration, among others, for murder), are essential to the ongoing operation of this criminal enterprise. The limitations on such meetings, as fostered by home detention, are a meaningful deterrent to recidivism and pretrial violations, and there is no reason to upset the very balance that the defense suggests has kept the defendant compliant (the baseline expectation of pretrial release) while his case has been pending.

Finally, the motion's arguments that a curfew with GPS monitoring is equivalent to "Villani's every movement . . . be[ing] tracked" and would represent a meaningful disincentive to violate are baseless. Wearing an ankle monitor can, generally, identify only one

type of pretrial violation—going to a prohibited place. Such a violation will become irrelevant if a curfew is granted. With leave to travel through Westchester County throughout the day and evening hours, the ankle monitor's location information would reveal nothing about with whom the defendant was meeting or the purpose of any meeting he took. It would not show if he went to a parking lot to pick up money from a bookmaker (as occurred here) or because he was shopping. Much of the defendant's criminal conduct in this case occurred in Westchester County, where he suggests his travel would be "restricted" to. The defense is fully aware that Pretrial Services does not actively follow supervisees and instead simply receives alerts when the ankle bracelet is in a restricted zone or removed. The contentions that wearing an ankle bracelet would lead to the "rapid[]" detection of any violation, or that limiting the defendant to the very county where he has operated for years would "ameliorate . . . concerns" are specious.

    For these reasons and those set forth in the government's initial letter concerning the conditions of release pending trial, the bail conditions considered and carefully imposed by Judge Mann should be continued.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:     /s/    
        James P. McDonald
        Antoinette N. Rangel
        Assistant U.S. Attorneys
        (718) 254-6376

cc:  Defense Counsel (by hand and ECF)
    Clerk of Court (by ECF)