# **EXHIBIT A**

Government's Letter of Sept. 14, 2022 to the Honorable Roanne L. Mann, U.S.M.J.



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NJM:JPM/ANR
F. #2015R00270

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 14, 2022

By Hand and ECF

The Honorable Roanne L. Mann
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: United States v. Anthony Villani, et al.
> Criminal Docket No. 22-405 (KAM)

Dear Judge Mann:

The government respectfully submits this letter in advance of the defendants' arraignments and bail hearings in the above-referenced matter. As explained below, the defendants—a soldier and various associates of La Cosa Nostra—present significant risks of continued criminal activity and unlawful association with other members of organized crime. Any release on bond should be under substantial restrictions and with secured financial packages.

I. The Indictment

On September 8, 2022, a grand jury sitting in this District returned a five-count Indictment charging Anthony Villani with racketeering, in violation of Title 18, United States Code, Section 1962(c); conspiracy to commit illegal gambling, in violation of Title 18, United States Code, 371; the operation of an illegal gambling business, in violation of Title 18, United States Code, Sections 1955(a) and 2; money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h); and money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i), 1956(a)(1)(B) and 2. Defendants James Coumoutsos, also known as "Quick," Dennis Filizzola, Michael Praino, also known as "Platinum," and Louis Tucci, Jr. were also charged with conspiracy to commit illegal gambling and illegal gambling. In addition, defendant Filizzola was charged with money laundering conspiracy and money laundering.

The indictment is the result of a multi-year investigation by law enforcement authorities into a long-running, illegal gambling business that operated under the protection of the Luchese crime family. The evidence in support of the charges includes judicially authorized

wiretap intercepts, consensual recordings of the defendants, numerous financial and internal records of the gambling operation, and law enforcement surveillances, among other items.

II.     The Offense Conduct[1]

For over 25 years, defendant Villani has been involved in significant gambling operations, principally based in the Bronx and Westchester, New York, that were affiliated with multiple La Cosa Nostra families.  Villani has several prior convictions for gambling offenses, including a prior indictment in this District.  In June 2004, Villani pleaded guilty in this District to operating an illegal gambling business.  See United States v. Villani, No. 02-CR-1399 (NGG), ECF No. 509.  In September 2004, the Honorable Nicholas G. Garaufis, United States District Judge, sentenced Villani to four months' imprisonment.  Id., ECF No. 545.  Additionally, in 1988, Villani was arrested for multiple crimes, including gun possession and promoting gambling in the Bronx.  Villani pleaded guilty in 1989 and was sentenced to five years' probation.  In 1998, Villani was convicted in Bronx County Supreme Court of possession of gambling records.

The government's investigation showed that Villani operated a gambling business that came to be called "Rhino Sports" (identified in the Indictment as the "Gambling Business").  To avoid law enforcement scrutiny, in the early 2000s, Villani moved most of his gambling office operations from the New York area to Costa Rica.  Initially bettors and bookmakers communicated by telephone to place bets, and by the mid-2000s most of the bets were placed over the Internet.[2]  Villani continued to rely on local bookmakers in the New York area to recruit new gamblers and pay and collect money.  Villani's bookmakers regularly included members and associates of the Luchese crime family and other La Cosa Nostra families.

After his prior federal conviction and sentence in 2004, Villani quickly returned to overseeing the operations of the Gambling Business.  The Gambling Business generated substantial cash for Villani and the Luchese crime family.  The government presently estimates that Villani earned more than $1 million in annual profits.  Records obtained from the Gambling Business's website showed that the operation regularly took bets from between 400 and 1,300 bettors each week, most of whom were based in New York City and the metropolitan area.

As noted, Villani involved numerous other members of the organized crime families in the Gambling Business.  The government's investigation further showed that Villani regularly associated and met with organized crime family members, including repeatedly

---

[1]     The proffer of facts set forth herein does not purport to provide a complete statement of all facts and evidence of which the government is aware or that it will seek to introduce at trial.  The government is entitled to proceed by proffer in a detention hearing.  United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

[2]     A "bookmaker" is an individual who manages bettors who place bets through the Gambling Business.

meeting with the acting boss of the Luchese crime family.  For example, the photograph below captured in May 2020 during the investigation depicts Villani meeting with members of the administration of the Luchese family in a way to avoid law enforcement eavesdropping and electronic surveillance:



Villani employed several trusted associates to help him mange the various operations for the Gambling Business.  These employees included defendants Louis Tucci, Jr. and Dennis Filizzola, who reported directly to Villani as part of their work for the Gambling Business.  Both were responsible for picking up and collecting money from other bookmakers and met frequently with Villani.

In addition, defendants James Coumoutsos, who operated in the Gambling Business under the name "Quick," and Michael Praino, who operated under the name "Platinum," were significant bookmakers and moneymakers for the business.  Defendant Coumoutsos was convicted of participating in an illegal gambling business in the U.S. District Court for Southern District of New York (Docket. No. 09-CR-1239 (PKC)), where he was charged alongside members of the Genovese crime family.  Coumoutsos was sentenced to 10 months' imprisonment.  See id., ECF No. 354.  Coumoutsos also has prior convictions for attempted criminal possession of a firearm, a felony, and robbery.  Praino has prior misdemeanor convictions for criminal possession of a firearm and attempted robbery.

Consensual recordings made by a government witness showed that Villani directly oversaw and managed minute details of the operation of the Gambling Business.  For example, in April 2020, when Villani met with Tucci inside a store they own in Bronxville, New York, the two discussed how bettors had been taking advantage of new casino games offered by

3

the Gambling Business when sporting events were cancelled during the early parts of the COVID-19 pandemic:

> VILLANI: Open up the Quick guys, casino. Um, no limit. I was on the phone with [redacted] for two hours last night. He says, well, you put them on 5,000 [UI] six. I said, [name redacted] nobody put them on it. Whatever happened, it's a mistake.
>
> \*\*\*
>
> VILLANI: I said this ain't f\*\*\*ing monopoly money. The casino is supposed to be a score for us.

As noted, the Gambling Business generated significant cash profits for Villani and others in the scheme. The investigation showed that Villani and Filizzola laundered cash proceeds from the Gambling Business. Among other ways, at Villani's direction, Filizzola took proceeds from the Gambling Business and used them to purchase U.S. Postal Service money orders in false names, which were then made payable to one of Villani's property companies to appear as legitimate rental payments.

During a series of property searches in December 2020, Federal Bureau of Investigation agents recovered additional extensive evidence of illegal gambling, principally in the form of large amounts of cash from each of Villani, Tucci and Filizzola. For instance, from Villani's residences, including from Villani's vehicles and/or person, agents seized over $55,000 in cash. At a second house owned by Villani, agents seized over $407,000 in cash, a set of brass knuckles and gambling ledgers (including some that had been shredded). At Filizzola's residence, agents recovered over $20,000 in cash. And at Tucci's residence, agents recovered over $55,000 in cash.

Finally, the investigation also revealed Villani's willingness to use threats of violence and his deep ties to organized crime to collect debts. Between at least April 2020 and October 2020, Villani, upon learning that another participant in the Gambling Business (identified as "John Doe" in the Indictment) had run up a large debt to Villani and mismanaged the Gambling Business's money, attempted to extort John Doe, including by telling him: "I'm telling you right now, you don't get this money – f\*\*\*ing run away."

III. The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight and no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). A finding of risk of flight or obstruction of justice must be supported by a preponderance of the evidence. United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Madoff, 586 F. Supp. 2d 240, 247 (S.D.N.Y. 2009).

The Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged, (2) the weight of the evidence against the defendant, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

IV. <u>The Defendants Pose a Continuing Risk of Criminal Activity</u>

Each of the defendants poses a risk of continued, serious criminal conduct. Although the principal charges here are non-violent, it is well-established that defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely that they will commit even non-violent crimes that are detrimental to the community. <u>See</u> <u>United States v. DiSano</u>, No. 18-CR-337-3 (WFK), 2018 WL 11191538, at *2 (E.D.N.Y. Dec. 14, 2018) ("Defendants pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community."). Moreover, the conduct is connected to an indisputably violent enterprise—the Luchese crime family. With respect to organized crime defendants, courts have observed that such defendants pose a particular threat to the community due to the continuing nature of these criminal organizations. <u>See</u> <u>United States v. Salerno</u>, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986) (finding that the illegal businesses of organized crime require constant attention and protection, and recognizing a strong incentive on the part of its leadership to continue business as usual).

Additionally, both Villani and Coumoutsos's prior criminal convictions and characteristics also weigh in favor of strict conditions of release and substantial bail packages. As noted, Villani and Coumoutsos have prior gambling convictions sustained in the context of larger La Cosa Nostra organized crime cases.

Moreover, the long-running scope of the conduct should favor stricter conditions of release. The defendants have been involved in this criminal conduct for more than a decade (and much longer for some). The defendants profited handsomely, in cash, from their roles in the Gambling Business. The defendants have a strong incentive to continue in such conduct to earn additional money and despite several FBI searches executed in December 2020 as described above law enforcement believes the Gambling Business is still operating in some form. Thus, any bail conditions should be significant to create the strongest disincentive possible to further criminal conduct.

Finally, Villani's threat to John Doe over outstanding debt owed to Villani and the Gambling Business demonstrates that he is willing to resort to physical violence to further his criminal enterprise militates in favors of strict conditions of release.

V. <u>Conclusion</u>

For the foregoing reasons, the government respectfully submits that the defendants should not be released unless and until they post substantial secured bonds, signed by

5

financially responsible sureties.  Further, any such release should be under strict conditions of supervision.

        Respectfully submitted,

        BREON PEACE
        United States Attorney

By:       /s/
        James P. McDonald
        Antoinette N. Rangel
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Defense Counsel (by hand and ECF)
        Clerk of Court (by ECF)